IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| **v.** | : Case No. 7:19cr00095 |
| | : |
| **ROGER ALLAN BELLINI** | : |

<u>**SENTENCING MEMORANDUM**</u>

COMES NOW the United States of America, by counsel and hereby submits its sentencing memorandum recommending that this Court sentence defendant Roger Allan Bellini within the Sentencing Guidelines range of 168-210 months imprisonment and 25 years supervised release.

**I.      INTRODUCTION**

On October 24, 2019, a grand jury returned a six-count indictment charging Mr. Bellini with one count of production of child pornography in violation of 18 U.S.C. § 2251(a), one count of coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b), two counts of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), one count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

On August 4, 2020, Mr. Bellini pleaded guilty to Count Two (coercion and enticement of a minor) and Count Six (possession of child pornography) of the indictment. Mr. Bellini and the United States entered into a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) where the parties agreed that Mr. Bellini shall be sentenced to a period of incarceration of between the statutory minimum 120 months and 210 months.

To date, three victims have submitted restitution requests. Exhibits 3, 5, 7. Mr. Bellini, through counsel, has agreed to provide each victim $3,000 in restitution payable immediately upon entry of a restitution order. Exhibit 1.

In light of facts that demonstrate Mr. Bellini was an eager and persistent consumer of child pornography who engaged in activity well beyond the possession and observation of images depicting the sexual abuse of children, the United States respectfully requests that this Court sentence Mr. Bellini to a sentence within the Guidelines range of 168 – 210 months and 25 years supervised release.

## II.     FACTUAL BACKGROUND

On February 26, 2014, Mr. Bellini used the chat website Omegle to engage in a video chat with a 12-year-old girl. Mr. Bellini used screen recording software to produce a video file of this chat, which he then saved to his computer. The video file depicts Mr. Bellini masturbating while the child places her hands inside her pants. The chat portion of the screen shows Mr. Bellini asking the child to move her hand so her genitals were visible, to which the child responds by displaying her genitals. On February 27, 2014, Mr. Bellini created a second video in a similar manner depicting the same child exposing her breast while he masturbates.

Review of Mr. Bellini's computers seized pursuant to a search warrant showed that he possessed more than 70 videos and hundreds of images of child pornography. Mr. Bellini acquired many of those videos and images by exchanging child pornography with groups of like-minded individuals on mobile messaging applications, downloading them using peer-to-peer software, and searching for them on the internet. These images and videos depict prepubescent girls being raped, inserting sex toys into their vaginas, masturbating, and inserting fingers into their anuses.

### III.     GUIDELINES CALCULATION

The Pre-Sentence Report was prepared on February 23, 2021. The Guidelines range is properly calculated at 168-210 months based on a total offense level of 35 and a criminal history category of I. The government has no objections to the report.

The appropriate Guideline for Count Two (coercion and enticement of a minor) is U.S.S.G. § 2G2.1, which specifies a base offense level of 32. Section 2G2.1 applies by cross-reference where "the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, and if the resulting offense level under § 2G2.1 is greater than the offense level determined under this guideline." U.S.S.G. § 2G1.3(c)(1). This cross-reference is to be construed broadly. *Id*. at n. 5(A). Here, the relevant conduct involves Mr. Bellini's enticement of a 12-year-old girl to display her genitals and masturbate on a video chat that he recorded and saved using screen capture software. This offense and all relevant conduct show that Mr. Bellini caused a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.

A two-level enhancement for an offense involving a minor between the ages of 12 and 16 pursuant to U.S.S.G. § 2G2.1(b)(1)((B) and a two-level enhancement for use of a computer to engage in prohibited sexual conduct pursuant to U.S.S.G. § 2G2.1(b)(6) result in a total offense level of 36 for Count Two.

The Guidelines range for Count Six (possession of child pornography) is based on U.S.S.G. § 2G2.2, which specifies a base offense level of 18. The following enhancements apply to Count Six: a two-level enhancement for material depicting a prepubescent minor pursuant to U.S.S.G. § 2G2.2(b)(2); a five-level enhancement for distribution in exchange for any valuable

consideration pursuant to U.S.S.G. § 2G2.2(b)(3)(F); a two-level enhancement for use of a computer pursuant to U.S.S.G. § 2G2.2(b); and a five-level enhancement for possession of over 600 images pursuant to U.S.S.G. § 2G2.2(b)(7)(D).[1] Totaling these enhancements results in an offense level of 32.

Count Two and Count Six do not group together. U.S.S.G. § 3D1.2. After application of the two-level increase pursuant to U.S.S.G. § 3D1.4, the combined offense level is 38. Mr. Bellini's acceptance of responsibility results in a three-level decrease under U.S.S.G. § 3E1.1 for a total offense level of 35.

With a Criminal History Category of I, Mr. Bellini's Guidelines range is 168 – 210 months. The statutory minimum sentence for a violation of 18 U.S.C. § 2422(b) is 120 months. While the statutory maximum for a violation of 18 U.S.C. § 2422(b) is imprisonment for life, Mr. Bellini's plea entered pursuant to Fed. R. Crim. P. 11(c)(1)(C) limits his maximum term of imprisonment to 210 months.

The mandatory minimum term of supervised release is 5 years and the maximum term is life. 18 U.S.C. § 3583(k).

## IV. LAW

In crafting an appropriate sentence, the Court must consider the factors set forth in 18 U.S.C. § 3553(a). These factors require the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" 18 U.S.C. §3553(a)(1). The Court must consider the need for the sentence

> A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;

---

[1] *See* U.S.S.G. § 2G2.2, n. 6(B) ("Each video, video-clip, movie, or similar visual depiction shall be considered to have 75 images."). Mr. Bellini possessed approximately 50 videos and hundreds of images of child pornography.

> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. §3553(a)(2).

The Court must then consider the kinds of sentences available, the Sentencing Guidelines range, and any pertinent policy statement issued by the Sentencing Commission. 18 U.S.C. §3553(a)(2). The sentencing court must next implement any applicable mandatory statutory limitations and conclude by articulating on the record the reasons for selecting the particular sentence and especially, if applicable, explain why a sentence outside of the Sentencing Guidelines range better serves the relevant sentencing purposes set forth in Section 3553(a) than one within it. A sentencing court which does not apply a properly calculated Guidelines range must base that decision on the factors listed in Section 3553(a). *See United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006).

As established in *United States v. Booker*, 543 U.S. 220, 220 (2005), the Sentencing Guidelines are no longer mandatory, only advisory. Nonetheless, sentencing proceedings begin by determining the applicable Guidelines range. *See Green*, 436 F.3d at 456. In this sense, the guidelines are "the 'starting point and the initial benchmark,'" *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (*quoting Gall v. United States*, 552 U.S. 38, 49 (2007)), and "are to be kept in mind throughout the process." *Gall*, 552 U.S. at 50 n.6. Here, a sentence within the Guidelines range is appropriate in view of the factors set forth in Section 3553(a).

# V. ARGUMENT

## A. The Nature and Circumstances of the Offense Justify a Sentence Within the Guidelines Range

The nature and circumstances of Mr. Bellini's offenses show his recurrent exploitation of children and his deliberate participation in a community that perpetuates the harm suffered by the victims of his offenses. Simply put, Mr. Bellini knew that his consumption of child pornography was illegal, but he consciously and repeatedly chose to seek and consume it. A sentence within the Guidelines range is necessary to account for the nature and circumstances of Mr. Bellini's offenses.

First, Mr. Bellini has been viewing child pornography for most of his adult life. The offenses to which Mr. Bellini pleaded guilty span a three-year period from 2014 to 2017 where he used online platforms to produce, receive, and distribute child pornography. In truth, Mr. Bellini's consumption of child pornography began when he was 19 and continued until he was caught at the age of 28. Presentence Report ("PSR"), ECF No. 57 at 12. Mr. Bellini's conduct is not an aberration or some isolated mistake. The offenses to which he pleaded guilty conform to behavior that was commonplace for him.

Second, Mr. Bellini's efforts to obtain child pornography were deliberate and considered. Mr. Bellini used screen capture software called "Debut Video Capture Software" to record his computer screen while engaged in a video chat with a 12-year-old girl on Omegle, an online video chat website. The video shows Mr. Bellini masturbating while the child displays her genitals. At one point in the chat, Mr. Bellini asked the child, in reference to her genitals, "can I see it for a second with your hand out of the way?" Mr. Bellini saved this video to his computer

to a folder displaying the child's true name and titled it "Pet and play.avi". Agreed Statement of Facts, ECF No. 43 at 3.

Mr. Bellini also used peer-to-peer software to download and share child pornography and sought out groups of like-minded criminals with whom he exchanged child pornography on Kik, a mobile instant messaging application. Mr. Bellini used Kik to engage in sexual conversations with children who he knew to be underage and in one instance sent a child a picture of his penis. Mr. Bellini used multiple email accounts to send himself the child pornography he obtained on Kik so that he could save those images on his computer. Mr. Bellini also emailed himself links from the online file hosting service Dropbox which contained child pornography. PSR, ECF No. 57 at 12-13. Mr. Bellini catalogued and stored images by creating 45 uniquely named folders on his computer. Agreed Statement of Facts, ECF No. 43 at 3.

Mr. Bellini specifically searched for material depicting the rape of prepubescent children by using graphic search terms, including "PTH" ("preteen hardcore"), "PTHC" ("preteen hard core"), and "young teen suck." Defendant's internet search history shows his conscious efforts to seek specific series of child pornography, including the "Siberian Mouse" and "Vicky" series of images. These images and videos include depictions of a prepubescent girl being orally penetrated by an adult penis, a prepubescent girl inserting a sex toy into her vagina, prepubescent girls masturbating, and a prepubescent girl inserting her finger into her anus. Mr. Bellini estimated that he possessed approximately 35 to 50 videos and hundreds of still images depicting the sexual abuse of children, including 40 videos from the "Siberian Mouse" series. Agreed Statement of Facts, ECF No. 43 at 5, 12.

Mr. Bellini's conduct is far from that of an unwitting participant in online exchanges or someone who stumbled upon illegal images. He sought child pornography using specific search

terms, participated in child pornography groups, personally enticed children to engage in sexually explicit conduct, created recordings of that conduct, and methodically catalogued his collection of child pornography. Mr. Bellini was aware that possession and trafficking of child pornography is illegal. PSR, ECF No. 57 at 12. He nevertheless repeatedly chose to engage in behavior that he knew to be illegal. Mr. Bellini continued this behavior until he was at least 28 years old.

A sentence below the Guidelines range does not adequately account for the pervasiveness and willfulness of Mr. Bellini's consumption of child pornography. The nature and circumstances of Mr. Bellini's quest for child pornography across multiple online platforms show that he deliberately engaged in this conduct over the course of many years. The low end of the Guidelines calculation should therefore be the starting point in deciding an appropriate sentence.

**B.** **The History and Characteristics of the Defendant Do Not Merit a Lenient Sentence**

Mr. Bellini's economic, social, or medical conditions do not mitigate his recurrent consumption of child pornography. Dismissing this behavior as simple indiscretion or anything other than the volitional conduct of a lucid adult minimizes the fact that his illegal behavior was contemporaneous with legitimate activities typical of a mature, responsible person. Mr. Bellini's history and characteristics therefore do not merit departure from the Guidelines.

Mr. Bellini is a well-educated and appropriately socialized adult with a history of stable employment and a supportive family. As a child, Mr. Bellini was homeschooled by his mother. He graduated community college with an associate degree in 2009. He has been consistently employed since 2006, most recently earning up to $27 an hour working as a social media and marketing coordinator. He has also worked as an assistant manager at a movie theatre, a server,

and special event staffer. His most recent employment appears to have been terminated after disclosure of criminal charges. Although Mr. Bellini is currently unemployed and must rely on his family for support pending the conclusion of these proceedings, he reports relatively healthy finances with stock investments, a 401k account, and no debt. PSR, ECF No. 57 at 21-22.

These activities demonstrate that Mr. Bellini was sufficiently mature and deliberative to seek educational opportunities and maintain stable employment. The investment of his modest earnings in stocks and retirement accounts shows that he is forward-looking—at least with respect to his money. While Mr. Bellini may not be affluent or particularly privileged, neither did he suffer from extreme poverty, hunger, homelessness, illiteracy, or other disadvantages experienced by many defendants. Mr. Bellini's education and work history show that a departure from the Guidelines is not appropriate.

Further, Mr. Bellini's history of substance abuse and mental health do not warrant leniency. Mr. Bellini reported abusing prescription opiates approximately two or three times a week throughout his adult life, including an overdose in 2017. PSR, ECF No. 57 at 21 ¶ 106. Notably, Mr. Bellini did not provide this information during his psychological evaluation. *See* Psychological Evaluation, ECF No. 56 at 11. Prescription opiate abuse—while concerning—has little to do with Mr. Bellini's consumption of child pornography. Mr. Bellini's substance abuse occurred while he was enrolled in college or gainfully employed and there does not appear to be any evidence connecting opioid abuse to his exploitation of children.

The more likely conclusion is that his substance abuse was a coincidental feature of his life during this period and it should figure only minimally into the Court's sentencing analysis. If anything, the Court should note that Mr. Bellini was not forthcoming about his substance abuse during his psychological evaluation, which suggests a level of self-interest and lack of candor

that damages the reliability of that document. *See* Psychological Evaluation, ECF No. 56 at 26 (the psychologist writes in his conclusions: "On a positive note, Mr. Bellini does not have a history of substance abuse or addiction nor any prior criminal history.").

The focal point of Mr. Bellini's psychological evaluation is his mental health and his experience of sexual abuse as a child. This does not justify a downward departure from the Guidelines. Rather, they suggest a need for Mr. Bellini's sentence to "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2)(D). If Mr. Bellini's mental health bears a genuine connection to his offenses, a sentence within the Guidelines range is necessary to provide the treatment he requires.

Mr. Bellini's psychological evaluation revolves in substantial part around sexual abuse he claims to have suffered as a child.[2] He reports that his step-grandfather sexually abused him two or three times a year from when he was approximately six to eight years old until he was approximately ten or eleven years old. Mr. Bellini reported that his "grandfather would sit him on his lap, tickle him, and play with his penis" and that "his grandfather would then put his penis between his legs and tickle him until he peed." Mr. Bellini claims that this abuse "impacted his

---

[2] Mr. Bellini's report of sexual abuse is not corroborated by independent evidence. *See* Haywood, Thomas et al., "Cycle of Abuse and Psychopathology in Cleric and Noncleric Molesters of Children and Adolescents" in Child Abuse & Neglect 20(12) (1996) at 1234 ("Studies into prevalence of childhood sexual abuse among sex offenders have produced mixed results with 8% to 60% of child molesters reporting having been sexually abused as a child. Variability in prevalence rates across studies may be due in part to differing motivations on the part of subjects to give self-serving histories. . .") (citations omitted); Briggs, F. and R. Hawkins, "A Comparison of the Childhood Experiences of Convicted Male Child Molesters and Men who were Sexually Abused in Childhood and Claimed to be Nonoffenders" in Child Abuse & Neglect 20(3) (1996) at 232 ("Perpetrators may lie about their actions or attempt to excuse their behavior by pointing to their own victimization as children. . . Excuse-making may be more prevalent in settings where such behavior may be useful, such as in the early stages of therapy (before learning that excuse-making is not acceptable) or during the trial process (perhaps under the guidance of enthusiastic defense lawyers).").

ability to make emotional connection with others" and affected his ability to become sexually aroused with an in-person partner. Psychological Evaluation, ECF No. 56 at 11.

Mr. Bellini's experience of sexual abuse as a child is a terrible thing for a child to endure. However, this abuse is not substantially connected to his criminal conduct. There are qualitative differences between the abuse he suffered and the crimes he committed. Mr. Bellini's crimes did not involve images resembling the abuse he experienced. The abuse he suffered did not involve online child pornography groups. It did not involve screen recording software or masturbating during video chats. It did not involve internet searches for images depicting the rape of prepubescent girls. While both the abuse he suffered and his crimes fall under the broad umbrella of child sexual exploitation, they have little else in common.

The mental health conditions Mr. Bellini experienced at the time of his offenses or those which he experiences today do not make him any less culpable.[3] The psychological evaluation describes Mr. Bellini as being diagnosed with posttraumatic stress disorder and "other specified personality disorder." Psychological Evaluation, ECF No. 56 at 16. It also diagnosed Mr. Bellini with major depressive disorder and noted that he is in sustained remission. *Id*.

These conditions are inapposite to the nature and circumstances of his offenses and the Court should accordingly give them little weight. The psychological evaluation does not make meaningful connections between these diagnoses and his criminal conduct. The psychologist paints a three-dimensional picture of Mr. Bellini's life and personality, describing him as "socially isolated," "overly sensitive to perceived slights," and "careful about what he shares of himself." Psychological Evaluation, ECF No. 56 at 14. Intriguing as these descriptions may be,

---

[3] Granting Mr. Bellini leniency because of his mental health is all the more inappropriate considering his discharge from behavioral health treatment in 2020 due to "lack of attendance and correspondence with the provider" after completing only half of his treatment. PSR, ECF No. 57 at 21 ¶104.

they do not explain how those qualities excuse a well-organized collection of child pornography collected over many years. Put bluntly, searching the internet for more images from the Vicky series was not a means for Mr. Bellini to cure his moribund social prospects. He did not have a social relationship with these images; he consumed them in satisfaction of his sexual attraction to children.

Similarly, Mr. Bellini's family circumstances do not justify a sentence below the Guidelines range. Mr. Bellini reports in his PSR that he otherwise had a "normal upbringing." PSR, ECF No. 57 at 20. Mr. Bellini describes experiencing corporal punishment as a child, including spanking with a stick or belt, but ultimately concludes that his mother was "extremely loving." Psychological Evaluation, ECF No. 56 at 3.

His two siblings are employed as a teacher and a restaurant manager. His stepfather, whom he has known for over 25 years and views as his primary father figure, is employed as a senior auditor for a large multinational insurance company. PSR, ECF No. 57 at 20. Per the representations of his defense counsel, Mr. Bellini's stepfather offered to facilitate the payment of restitution on his behalf. *See* Exhibit 1. Mr. Bellini resided with his stepfather at the time he committed his most recent offense in 2017. He has continued to reside with his family during the pendency of this case.

This is not the type of family history that justifies lenient treatment at sentencing. To be sure, Mr. Bellini's upbringing was not charmed and did not accord him any special advantages over his peers. Nevertheless, his family was not so broken or toxic that he was unable to acquire the basic social tools necessary to participate in society and abstain from illegal conduct that caused significant harm to child victims.

In sum, Mr. Bellini's childhood trauma, mental health, or family history did not cause him to exchange child pornography on Kik. They did not cause him to carefully index his collection of child pornography. They did not cause him to set up a screen recording program to create a video of his video chat with a 12-year-old while he masturbated. Mr. Bellini admits as much when he acknowledged that child pornography is illegal and wrong. PSR, ECF No. 57 at ¶ 35, 38, 53. Mr. Bellini must be held accountable for his conduct, and a sentence within the Guidelines range provides that accountability.

C.      **A Sentence Within the Guidelines Range is Necessary to Reflect the Seriousness of the Offense**

Mr. Bellini stated that he "never hurt anyone" and that "he never had sexual contact with a minor and never associated with anyone that had." PSR, ECF No. 57 at 14. This explanation shows Mr. Bellini's detachment from the serious harm caused by the sexual abuse perpetrated during the creation of the images he consumed and his thoughtlessness about how his behavior perpetuates this harm. The harm caused by Mr. Bellini's behavior is substantial and tangible. The victim impact statement for "Lily" (of the "Vicky" series and a victim of Count Six) describes what these images actually represent: "we are not talking about an object or an image, we are talking about little children, like I was, being abused. It's real and becomes a life-long battle." Exhibit 6, at 3. Lily describes how this harm will follow her for the rest of her life, writing, "I live everyday with the horrible knowledge that many people somewhere are watching the most terrifying moments of my life, and taking grotesque pleasure in them." *Id*. at 1. Lily sums up her experience by writing, "The men that download my pictures are all around me for all I know and it will keep going on forever. I have no control over it at all. This is frightening, beyond belief." *Id*. at 2.

13

Two additional victims submitted statements describing the harm caused by the trafficking of images depicting their sexual abuse. The mother of "Violet" (of the "At School" series and a victim of Count Six) writes, "For four long years, our daughter's sexual abuse was recorded on camera and subsequently distributed over the internet. […] Today's Information Age of Technology [*sic*] where most people benefit from such advances, has and will become even more so, a living hell for our daughter. As we all know, once something is posted over the World Wide Web, it cannot be taken back." Exhibit 4, at 1.

These victims will likely never escape the harm caused by the behavior of Mr. Bellini and people like him. "Jenny" (of the "Jenny" series and a victim of Count Six) writes, "I went to therapy for a while but I stopped because I just wanted to forget it. With the pictures still out there I can't." Exhibit 2.

The scores of victims who did not furnish victim impact statements likely suffered similar harm, as these experiences are unfortunately very common among victims of child pornography. "It is well established that children featured in child pornography are harmed by the continuing dissemination and possession of that pornography. Such images are 'a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.'" *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)). The harm suffered by victims of child pornography is well supported by medical and social science. *See Ferber*, 458 U.S. at nn. 9–10 (collecting authority).

Considered through the lens of Section 3553(a)(2), these statements show that Mr. Bellini's internet-facilitated sexual exploitation of children is a serious offense that causes lifelong harm to his victims.

Moreover, purported difficulties in quantifying Mr. Bellini's proportional contribution to

the harm suffered by these victims fails to reduce the seriousness of his crimes or justify a below-Guidelines sentence. This argument would be, at its core, a request for leniency because Mr. Bellini is but one of many criminals who traffic in child pornography. In *Paroline v. United States*, the Supreme Court recently discussed the harms caused by child pornography traffickers in the context of restitution for victims of child exploitation:

> Child pornography possessors are jointly liable under this standard, for they act in concert as part of a global network of possessors, distributors, and producers who pursue the common purpose of trafficking in images of child sexual abuse. As Congress itself recognized, "possessors of such material" are an integral part of the "market for the sexual exploitative use of children." Moreover, although possessors like Paroline may not be familiar with every last participant in the market for child sexual abuse images, there is little doubt that they act with knowledge of the inevitable harms caused by their combined conduct. Paroline himself admitted to possessing between 150 and 300 images of minors engaged in sexually explicit conduct, which he downloaded from other offenders on the Internet. By communally browsing and downloading Internet child pornography, offenders like Paroline "fuel the process" that allows the industry to flourish. Indeed, one expert describes Internet child pornography networks as "an example of a complex criminal conspiracy"—the quintessential concerted action to which joint and several liability attaches.

*Paroline v. United States*, 134 S. Ct. 1710, 1741 (2014) (internal citations omitted).

The harm suffered by these victims shows that Mr. Bellini's crimes are very serious. *See, e.g.*, *United States v. Pugh*, 515 F.3d 1179, 1202 (11th Cir. 2008) ("[W]e have typically treated child sex offenses as serious crimes, upholding severe sentences in these cases"); *United States v. Guerra*, 535 Fed. App'x 214 (4th Cir. 2013) (affirming 120-month sentence for possession of child pornography); *United States v. Mejia-Molina*, 496 Fed. App'x 683 (8th Cir. 2013) (upholding a sentence of 151-months of imprisonment for receipt of child pornography). This Court should recognize the seriousness of Mr. Bellini's crimes by sentencing him within the Guidelines range.

**D.      The Sentence Must Afford Adequate Deterrence to Criminal Conduct**

The sentence in this case should afford adequate general deterrence. Congress, the Supreme Court, and the Sentencing Commission find general deterrence to be an important factor when considering an appropriate sentence. *See, e.g.*, *United States v. Irey*, 612 F.3d 1160, 1211 (11th Cir. 2010) (quoting *Ferber*, 458 U.S. at 760) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *see also Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."); *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("[D]eterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing[.]"); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

The Sixth Circuit in part reversed a district court when the district court failed to see any importance in general deterrence. *See United States v. Bistline*, 665 F.3d 758,767 (6th Cir. 2012). The district court stated, "general deterrence ... will have little [if] anything to do with this particular case." *Id*. The Sixth Circuit found the district court's statement was "inexplicable, and in any event conflicts with our statement that general deterrence is crucial in the child pornography context[.]" *Id*. (internal citation and quotations omitted).

16

### E. Protection of the Public from Further Crimes of the Defendant

Mr. Bellini's psychological evaluation describes him as being "in the Average risk category for being charged or convicted of another sexual offense." Psychological Evaluation, ECF No. 56 at 19. An argument that this assessment somehow means Mr. Bellini will not reoffend is not a valid ground for a downward departure because this factor is taken into account in the Guidelines themselves. *United States v. Goldberg*, 295 F.3d 1133 (10th Cir. 2002) (Defendant's unblemished criminal record, no actual victim and a low risk of recidivism are not valid grounds for a downward departure because those factors are all taken into account in the guidelines themselves); *United States v. McCart*, 377 F.3d 874 (8th Cir. 2004) ("the district court did not specify any particular facts relevant to rehabilitation that make McCart's case different from those of thousands of other offenders and thus cannot serve to take his case out of the heartland of those to which the Guidelines apply.") (internal citations and quotations omitted).

### CONCLUSION

For the reasons stated above, the government recommends that the Court impose a sentence within the Guidelines range for Defendant Roger Allan Bellini.

Respectfully submitted,

                                        DANIEL P. BUBAR
                                        Acting United States Attorney

Date: February 25, 2021                */s/ Rachel Barish Swartz*
                                        Rachel Barish Swartz
                                        Assistant United States Attorney
                                        New York State Bar No. 4667044
                                        Western District of Virginia
                                        P. O. Box 1709
                                        Roanoke, VA 24008-1709
                                        Tel: (540) 857-2250

Fax: (540) 857-2283
Email: rachel.swartz@usdoj.gov

/s/ *Eduardo Palomo*
Eduardo Alberto Palomo
Trial Attorney
Texas Bar No. 24074847
United States Department of Justice
1301 New York Ave NW
Washington, D.C. 20005
Tel: (202) 305-9635
Email: Eduardo.palomo2@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send a copy of said filing to counsel for the defendant.

/s/ Rachel Barish Swartz
Assistant United States Attorney