IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 7:19-cr-00095 |
| | ) | |
| ROGER ALLAN BELLINI | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW Defendant, Roger Allan Bellini, by counsel, and respectfully submits the following memorandum in support of Defendant's request for the court to impose a sentence of ten years, which is the mandatory minimum sentence required in this case.

Mr. Bellini comes before this Court having pled guilty to one count of enticement of a minor in violation of 18 U.S.C. §§ 2422(b) and 2427, and one count of possession of child pornography in violation of 18 U.S.C. § 2522(a)(4)(B).

In fashioning an appropriate sentence in this case the Court must, among other considerations, impose a sentence no greater than that which is sufficient to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  See 18 U.S.C. §3553(a)(2).  See also U.S. v. Gall, 552 U.S. 38 (2007), U.S. v. Hughes, 401 F.3d 540 (4th Cir. 2005) and U.S. v Pauley, 511 F3d 468, (4th Cir. 2007).

In determining departures or variances from the Guidelines at sentencing, the Court must place on the record an "individualized assessment based on the particular facts of the case before it," whether the Court "imposes an above, below, or within-Guidelines sentence."  United States

v. Carter, 564 F.3d 325, 330 (4th Cir. 2009) (internal quotation marks omitted).  "[E]very sentence requires an adequate explanation," however, "a more complete and detailed explanation of a sentence is required when departing from the advisory Sentencing Guidelines, and a major departure should be supported by a more significant justification than a minor one."  United States v. Hernandez, 603 F.3d 267, 271 (4th Cir. 2010) (internal quotation marks omitted).  The Supreme Court also requires the sentencing court to consider the person before the court, stating "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  Koon v. United States, 518 U.S. 81, 113 (1996).

To do so properly, this Court must follow the three-step process set forth in Gall v. United States, 552 U.S. 38 (2007).  First, this Court must properly determine the guideline range. Second, this Court must determine whether to apply any of the Guidelines' departure policy statements to adjust the guideline.  Third, this Court must consider all the factors set forth in 18 U.S.C. § 3553(a) as a whole, including whether a variance is warranted.

## PROPERLY DETERMINING THE GUIDELINES RANGE

Mr. Bellini does not object to the offense level computations set forth in paragraphs 65 through 89.  Paragraph 68 on page 16 sets forth a two-point enhancement for creating two videos of Minor A pursuant to § 2G2.1.  While there is no such two-point enhancement set forth in this section to support this enhancement for this specific reason, paragraph (b)(6)(B) adds two points for the use of computer to persuade a minor to engage in sexually explicit conduct so this enhancement does apply.  Similarly, paragraph 76 sets forth a two-point enhancement for Mr. Bellini emailing child pornography images between his own email accounts in order to move the

files between his own computers, which is not a specific enhancement set forth in § 2G2.2. However, there is a two-point enhancement in 2G2.2(b)(6) for using computers to possess such material which does apply.

After correctly combining the scores for the two offenses the total offense level of 35 is correctly calculated, and Mr. Bellini has no criminal history resulting in a criminal history score of zero as set forth in paragraph 93.

## FACTORS SUPPORTING A DEPARTURE

The court may depart from the Guidelines under the second prong of *Gall* for many of the reasons set forth below that support a variance in this case, so for brevity Mr. Bellini incorporates all the arguments set forth below as also supporting a departure under the Guidelines.  Mr. Bellini highlights the arguments concerning the facts that he was not charged for over two years after he confessed to the United States that he committed these crimes, that the United States knew he regularly traveled interstate to New York for his job during this time, that he remained on bond after being charged, and that the United States did not object to this Court allowing him to delay report to jail after taking his guilty plea as specific reasons for the court to believe this case is not the typical mine-run case already adequately accounted for in the Guidelines calculations.  Thus, the court is authorized in granting a four-point departure, reducing the applicable level from 35 to 31, and resulting in a guidelines range of 108-135 months, and imposing the mandatory minimum sentence of 120 months.

## FACTORS SUPPORTING A VARIANCE UNDER 18 USC § 3553

Under the third prong of *Gall*, the court must consider all the factors set forth in 18 U.S.C. § 3553(a) as a whole to determine whether a variance is warranted.  These include:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed

>   (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

>   (B)  to afford adequate deterrence to criminal conduct;

>   (C)  to protect the public from further crimes of the defendant; and

>   (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the guidelines and the sentencing range established;

(5)  any pertinent policy statement;

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)  the need to provide restitution to any victims of the offense.

See 18 U.S.C. § 3553(a)(1)-7); Gall v. United States, 552 U.S. 38 (2007).

After consideration of all these factors, the court ought to impose the mandatory minimum sentence of ten years in this case.

### 1.      Section 3553(a)(1): The nature and circumstances of the offense and the history and characteristics of the defendant.

Mr. Bellini is now thirty-one years old.  On October 16, 2017, law enforcement officers interviewed Mr. Bellini and he immediately cooperated and admitted his crimes.  Once confronted, he not only confessed to his crimes, but he also signed releases and voluntarily gave law enforcement his computers and other digital devices so they could search them for additional

indicia of crimes, and he continued to cooperate over the course of the next few years.  As more fully set forth in the agreed statement of facts filed in this case, Mr. Bellini admitted to using computers and the internet to download child pornography, and to enticing a minor into performing a sexual act on video while he recorded it.  He also admitted to searching for child pornography and sharing such videos on a file sharing service, all of which occurred between 2014 and October 16, 2017 when he was between 25 and 28 years old.

Despite admitting his involvement in these crimes and plainly subjecting himself to immediate arrest or indictment, the United States did not choose to indict Mr. Bellini until October 24, 2019, over two years later.  During these two years Mr. Bellini remained free to travel the United States, even working in and regularly commuting to New York, all without any official oversight by the court or law enforcement.  However, he did remain in contact with the law enforcement investigators although he was under absolutely no legal requirement to do so.

Even after being charged and brought before the court, Mr. Bellini remained free on bond until he entered his plea on August 4, 2020, which was almost three years after his initial encounter with law enforcement.  Indeed, at the plea hearing Mr. Bellini moved the court to remain free on bond pending sentencing which the court initially stated it would deny, however, when the United States did not object to the court allowing him to report to jail later the court ultimately did not immediately remand to him custody and he was allowed to self-report to jail at a later date.  Further, during this almost three-year period he remained employed until his arrest and has had nothing further to do with child pornography since then.  As noted above, Mr. Bellini has no criminal history at all resulting in a criminal history category of I.

Dr. Mark Hastings, Ph.D., is a Certified Sex Offender Treatment Professional (CSOTP) and has testified as an expert in the field in federal and state courts.  He is recognized as an

expert in sexual psychological assessments pursuant to federal law and has conducted Sexually Dangerous Persons evaluations as an expert pursuant to 18 U.S.C. § 4248 for the United States Attorney's Office Eastern District of North Carolina, Office of the Federal Public Defender, and United States District Court Eastern District of North Carolina (court-appointed examiner).

Dr. Hastings conducted a psychological assessment of Mr. Bellini on June 25, 2020, which has been filed under seal with the court and is document #56 in the ECF for this case.  The United States has been provided a copy separately.  Mr. Bellini incorporates by reference the psychological evaluation, Dr. Mark Hastings, Forensic Psychological Evaluation, dated August 02, 2020, filed on February 11, 2021, ECF Doc. # 56, as Attachment 1 as if it is attached to this memo but will not attach it as it is filed under seal.  Dr. Hastings' CV is attached as Attachment 2.

On page 9 of its sentencing memorandum, the United States argues that Mr. Bellini basically lied to Dr. Hastings, and therefore the entire psychological assessment may be disregarded.  This argument is based on the fact that Dr. Hastings documented him stating he had no drug abuse or drug addiction issues but told the probation officer he did as documented in the PIR.  This argument, however, is based on incomplete and inaccurate facts.

Mr. Bellini expects the evidence at the sentencing hearing to show that he underwent and completed the Changing Offender Behavior program on November 30, 2020, while incarcerated in the Western Virginia Regional Jail.  His certificate of completion is attached as Attachment 3. It was through this program that he learned and realized that taking prescription pills as he had been doing for many years was, in fact, abuse and he was possibly addicted to the drugs, and that it did not matter that the drug abused was an otherwise legally prescribed drug.  Obviously, having come to this realization in November 2020, he had not learned to view this as abuse or an

addiction in June 2020 during his psychological assessment interview with Dr. Hastings.

Additionally, it is expected that the evidence submitted during the sentencing hearing in this case will show that the overdose referenced in the paragraph 106 of the PIR occurred in August 2020, not in 2017.  On the day of the overdose in early August 2020, Mr. Bellini disappeared with all the remaining pills in one of his mother's prescription pill bottles, was reported missing to the Roanoke County Police, was found some hours later and taken to the hospital to be treated for the overdose.  Again, this occurred after the interview with Dr. Hastings in June 2020 so it could not have been disclosed to him during the interview.

Far from being labeled untruthful or a liar, it is expected the evidence will show that Mr. Bellini has been truthful from that first day he was confronted by law enforcement in October 2017, and he has now engaged in treatment programs that are helping him deal with his many psychological issues inflicted upon him at a young age by the sexual abuse he suffered and that continue to haunt him through his PTSD and drug abuse.  It cannot be gainsaid that recognizing an addiction or abusive behavior towards drugs is the first step in resolving the issue, and he should be commended for this realization, not vilified and minimized as the United States would have the court do to Mr. Bellini.  It is further expected that the evidence will show that incorporating all this information into his opinion does not change Dr. Hastings' overall sexual psychological assessment of Mr. Bellini.

Mr. Bellini's upbringing is wrought with both sexual and physical abuse coupled with troubling episodes for which he clearly needs professional therapy to resolve.  The statement in paragraph 98 in page 19 of the PIR perfectly captures the effect the abuse had on his psyche.  It literally recites that he remembers an incident when he was a child where his natural father choked his mother, and that his step-grandfather sexually abused him for many years starting at a

young age, but that "aside from those instances, [he] believes he had a normal upbringing." PIR, paragraph 98, page 19.  It is impossible for the average person to believe surviving sexual abuse and exorcisms is a normal upbringing.  Having survived such abuse and growing up with it, he is able to paint a picture that is too rosy for the average to believe because he knows no difference, that is his life therefore it is must normal otherwise he is not normal.  But it is not just the abuse inflicted on him, it is his reaction to it that also reveals troubling issues and shows the court how this has affected him.  For instance, one troubling event is that he remembers "going months without speaking at all" as a young child.  Dr. Mark Hastings, Forensic Psychological Evaluation, August 02, 2020, page 4 (hereafter "FPE").  Any young child going for months without talking is simply not normal behavior.

Additionally, he describes his mother as "extremely loving", but that he is actually closer to his sister.  FPE, at 3.  Such a characterization of his mother is hard to square with a mother who, after becoming extremely religious and adopting extreme religious views, helped perform a religious ritual on him with other church members in order to "chase the demons out" of him.  Id., page 3.  She apparently felt this necessary based upon his acting out in school, which was in turn really based upon his reaction to the sexual and physical abuse he suffered. Id., page 3.  Basically, instead of finding some type of legitimate psychological help for Mr. Bellini when he was 10 or 11 to help resolve his acting out in school, his mother conducted some type of exorcism on him.  Needless to say, this did nothing to stop the sexual abuse he was suffering through, nor help him psychologically deal with these issues, and probably worsened the entire situation.   Sadly, if his mother had turned to legitimate psychological assistance rather than exorcism, Mr. Bellini may have been provided the tools needed to deal with such trauma and perhaps his step-grandfather may have been held accountable for his crimes.

The United States' characterization of Mr. Bellini's disclosure of sexual abuse on page 10 of its sentencing memorandum is particularly disturbing, requiring a response.  In a footnote on page 10, the United States opines that his report "is not corroborated by independent evidence". It then chose to include and specifically set forth a quote from a study that lying about being sexually abused and that excuse making for their conduct "may be more prevalent in settings where such behavior may be useful, such as … during the trial process (perhaps under the guidance of enthusiastic defense lawyers).")  ECF Doc. # 58, U.S. Sentencing Memorandum, page 10, footnote 2.  Mr. Bellini strongly condemns the United States' cheap insinuation that he is lying about the abuse he suffered and that his attorney may be guiding him to say it.  If they have such evidence of a fraud being perpetrated at the behest of the attorney in this case, then they should come forward with their evidence.  If not, they should submit a written retraction.

Further, his disclosure of abuse is not uncorroborated, for, as set forth on page 4 of Dr. Hastings' report, Mr. Kevin Weiman, who is his father, confirmed that Mr. Bellini's sister told Mr. Weiman that Mr. Bellini had disclosed the sexual abuse to his sister years earlier. Additionally, given the United States written accusation accusing Mr. Bellini of lying, a statement from his sister, Amanda Powers, confirming Mr. Bellini disclosed their step-grandfather's sexual abuse in 2011 to her is attached as Attachment #4.  Many convictions have been had in courts of law with such corroboration.  With the full array of the United States Government at its disposal, contacting Mr. Bellini's sister would seem an easy way to corroborate it rather than casting aspersions on Mr. Bellini, his attorney, and Mr. Weiman.  It should disappoint anyone involved in any aspect of these cases that the United States would so cavalierly dismiss a claim of sexual abuse by a survivor simply because it does not fit in with the narrative it wants to portray at sentencing.  Such a position being made in writing by prosecutors

for the United States Attorney's Office and the Child Exploitation and Obscenity Section of the Department of Justice, the very entities entrusted with investigating and prosecuting such crimes, is simply shocking.

As to the effect this upbringing and abuse had on Mr. Bellini, Dr. Hastings wrote that it has resulted in Mr. Bellini being "a man who is immature, naïve, and inexperienced for his age. He is a loner who is fearful of rejection. He suffers from varied social and sexual inadequacies and has difficulty performing sexually in-person. He has coped with these various feelings and problems by living an increasing portion of his life online. What limited relationships and friendships he has had have started and remained mostly online." FPE, at 12-13. He notes that Mr. Bellini "began experiencing other signs of mental illness as a child beyond his ADHD. He was often depressed, felt suicidal, and engaged in regular acts of self-mutilation, such as pulling his toenails off to distract himself from his emotional pain. He had nightmares, trouble sleeping, and difficulty modulating his anger." FPE, at 25. He further states that Mr. Bellini "has a history of trauma as a child that has resulted in poor self-esteem, inadequacies and self-doubt, depressive episodes, and maladaptive coping behaviors, including self-mutilation and over-reliance on the internet for social and sexual connection." FPE, at 13. Obviously, the terrible sexual assaults from his grandfather and other abuse he suffered in his childhood have wrought a horrible psychological toll on him.

Despite this effect on his overall psyche, Mr. Bellini's scoring on actuarial assessments designed to predict sexual recidivism all showed Mr. Bellini only an average risk "with sexual recidivism rates of 7-8% on the Static-99R and Static-2002R and a 6.3% contact sex re-offense rate and 7.7% child pornography re-offense rate on the CPORT-2. At age 40, Mr. Bellini's Static scores will drop by another point and the recidivism rates will be even lower (i.e., 4-5%)."

FPE, at 27.  It is important to note the level of these risks to put what it means to be "an average risk" rating in perspective.  All these scores emphatically show overwhelming evidence that Mr. Bellini's average risk scoring today puts him squarely in the over 90% pool of the sample who did not recidivate in five years, and in the over 95% who would not recidivate when he reaches 40 years of age.

After considering these static risk factors, Dr. Hastings sets forth various dynamic risk factors applicable to Mr. Bellini.  Of particular note is Dr. Hastings' finding that the various testing scores show Mr. Bellini is "an individual who no longer hold[s] distorted perceptions concerning his behavior and who reports a greater degree of control over his behavior than other child pornography offenders. These are positive indicators for treatment." FPE, at 16.

Considering all the available evidence, his interview with Mr. Bellini, the applicable tests and scoring, and all the other information set forth in his report, in Dr. Hastings' expert medical opinion he diagnosed Mr. Bellini with Major Depressive Disorder, Recurrent, In Sustained Remission; Posttraumatic Stress Disorder; and Other Specified Personality Disorder (Avoidant, Schizoid, and Borderline traits).  His report sets forth the support and reasoning for these diagnoses.  Significantly, he did not diagnose Mr. Bellini with any paraphilic disorder or disorder of sexual deviance.  FPE, at 26.

Synthesizing together all Mr. Bellini's information, his past trauma, his psychological scoring on the various tests administered, the facts of this case, and all the other available information, Dr. Hastings' stated "it is this psychologist's opinion to a reasonable degree of psychological certainty that Mr. Bellini is a low risk for sexual reoffending." FPE, at 27.  As to how he would fare on supervised release, Dr. Hastings wrote "Mr. Bellini has been in the community for nearly three years since detection without incident.  This fact and his overall

history indicate he is likely to be cooperative with post-release supervision efforts." <u>FPE</u>, at 27.

This is not say that Mr. Bellini does not need help in dealing with this past trauma. As Dr. Hastings stated, Mr. Bellini should "seek out mental health treatment for depression and PTSD during his upcoming incarceration. As he is prone to depression, self-mutilation, and suicidal thinking, he should be closely followed by BOP Psychology Services. Sex offender treatment, anger management, self-regulation, and social skills are other classes/therapies that could be of benefit to him." <u>FPE</u>, at 27. Instead of seeking such counseling, Mr. Bellini sought to hide from his pain and reality with online relationships with minors that has resulted in these charges before the court.

The evidence does show that Mr. Bellini has begun appropriately dealing with the trauma as Dr. Hastings suggested, which started with agreeing to be evaluated by Dr. Hastings. It continued after having been incarcerated for these crimes when he took another excellent step in completing the Changing Offender Behavior program while awaiting sentencing in the WVRJ. Even more impressive is that he has had his first breakthrough in dealing with all the issues emanating from the abusive upbringing as this course helped him realize that he was abusing prescription drugs since his early teenage years.

Overall, Mr. Bellini's history and characteristics show that he is now a 31-year-old man who suffered terrible trauma throughout his childhood for which he needs professional therapy, that the trauma he suffered is directly linked to the crimes he committed, that he has begun successfully availing himself of such therapy while he has been incarcerated, that he remained free without any legal oversight for almost two years after confessing to his crimes and that he immediately ceased viewing child pornography and contacts with teenagers upon being confronted by law enforcement over three years ago, that the United States' actions in this case

show that Mr. Bellini is a low risk to the public, that his psychological profile also shows he is a low risk to reoffend when he is eventually released from prison, and that he is likely to comply with all requirements of supervised release.

**2.      Section 3553(a)(2): The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

It is axiomatic that a ten-year prison sentence is a significant sentence, which along with the accompanying loss of certain civil rights such as the right to vote, hold office, and possess firearms are significant repercussions to any offender, and reflects the seriousness of this offense, promotes respect for the law, and affords adequate deterrence to criminal conduct.  Additionally, sentencing Mr. Bellini to ten years in prison for his first offense conviction is without question a significant sentence that provides just punishment for the offense, provides adequate deterrence to the general public and specifically to Mr. Bellini.

Based on his history and characteristics, the fact that the United States allowed him to remain free and did not charge him with a crime for over two years after he confessed, and that the United States did not object to allowing him to delay reporting to jail after the court accepted his plea and was going to immediately remand him to jail, all of which supports the psychological evaluation showing Mr. Bellini is of low risk to reoffend, there is no evidence upon which to base any belief the public needs protection from further crimes of Mr. Bellini.

As more fully set forth above, Mr. Bellini clearly needs professional therapy to deal with and overcome his trauma.  The Bureau of Prisons (BOP) has numerous programs available to inmates to provide them with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  The BOP's latest publication of its

programs, Directory of National Programs, was published on September 13, 2017, and is
attached as Attachment 5.  This may be accessed through the BOP website at:
https://www.bop.gov/resources/publications.jsp.  The Sex Offender Treatment Program –
Nonresidential (SOTP-NR) is designed for low to moderate risk sexual offenders which seems
suitable for him based on Dr. Hastings' evaluation.  If, for some reason not foreseeable now, the
BOP deems this inappropriate he could enter the SOTP-Residential, which is designed for high
risk sexual offenders.  Regardless of how the BOP may classify him, there is sex offender
treatment available to him.  Based on his history, other programs that also seem suitable for him
are: Resolve Program, Residential Drug Abuse Program (RDAP), Nonresidential Drug Abuse
Program, Challenge Program, Drug Abuse Education.  Of course, he may choose to enter any
other programs that may benefit him such as the Occupational Education Programs, Federal
Prison Industries, Inc. (FPI) (also known by its trade name UNICOR), Bureau Rehabilitation and
Values Enhancement (BRAVE) Program, or the Skills Program.

There is no doubt that a ten year prison sentence satisfies the court's requirement to
ensure its sentence affords Mr. Bellini enough time to obtain and complete any educational or
vocational training, medical care, or other correctional treatment to help him resolve his issues
before he is placed on supervised release.

**3.      Section 3553(a)(3), the kinds of sentences available, and (a)(4), the guidelines
and the sentencing range established.**

The PIR sets forth guidelines of 35 points and a criminal history category of I for a
sentencing range of 168 to 210 months.  The plea agreement entered allows for a sentence to be
imposed between 120 to 210 months.  If the court grants the 4 point departure requested above,
then the guidelines would be 108-135.  Mr. Bellini adopts the arguments set forth in the next
section as applicable to § 3553(a)(3) and (4) to argue that the court may find that the mandatory

minimum sentence of 120 months is within the correctly calculated guidelines range by granting a departure, or that it is available to be imposed by a variance.

4.    **Section 3553(a)(5): Pertinent policy statements.**

In the Sentencing Reform Act of 1984 (the SRA), Congress gave specific directions to district court judges, as well as to the United States Sentencing Commission and the courts of appeals.  The central directive to sentencing judges includes "an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing."  Kimbrough v. United States, 128 S. Ct. 558, 570 (2007). A judge's job is thus to evaluate independently whether a sentence recommended by the guidelines best complies with the statute.

The SRA directed the Commission to develop guidelines that "assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code." 28 U.S.C. § 991(b)(1)(A).  It authorized the Commission to engage in research and wide-ranging consultation with other participants in the criminal justice process.  It gave the Commission powers to "develop means of measuring the degree to which the sentencing, penal, and correctional practices are effective in meeting the purposes of sentencing." 28 U.S.C. § 991(b)(2).  To do this, the Guidelines manual states "the guidelines represent an approach that begins with, and builds upon, empirical data."  United States Sentencing Guidelines, § 1A(3), page 5 (2018).

When the guidelines are not so developed, however, they cannot be relied upon for sound advice regarding what sentence best complies with 18 U.S.C. § 3553(a).  The Supreme Court noted that "not all of the Guidelines are tied to this empirical evidence.  For example, the Sentencing Commission departed from the empirical approach when setting the Guidelines range

for drug offenses, and chose instead to key the Guidelines to the statutory mandatory minimum sentences that Congress established for such crimes." Gall, 552 U.S. at 46 n.2.  When a guideline is not the product of "empirical data and national experience," it is not an abuse of discretion to conclude that it "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case."  Kimbrough, 552 U.S. at 110.

Under the terms of the statute, judges must consider the guidelines in order to glean from them the benefit of any advice they may offer for how best to achieve the statutory goals.  In this consideration, there can be no proverbial thumb on the scales in favor of the guidelines.  The sentencing judge may "hear arguments by prosecution or defense that the Guidelines should not apply[.]"  Rita v. United States, 551 U.S. 338, 351, 127 S. Ct. 2456, 2465 (2007).  Those arguments may be that the case falls outside the "heartland" and thus warrants a departure, or that the guidelines range "fails properly to reflect § 3553(a) considerations," or simply that "the case warrants a different sentence *regardless*."  Rita, 127 S. Ct. at 2465 (emphasis added).  The sentencing judge may not apply "a legal presumption that the Guidelines sentence should apply," id., and "may not presume . . . that the Guidelines range is reasonable," Gall, 128 S. Ct. at 596-97.

Some guidelines reflect little more than exclusive conversations between Congress and the Commission.  Such guidelines reflect a distortion, not a fulfillment, of the Commission's mandate, which was, and is, to formulate guidelines (1) based on independent research and input from a wide range of sources, including judges, and (2) that serve all of the purposes of sentencing.  A district court is well within its discretion to critically evaluate a guideline that results from this partial implementation of the Commission's mandate.  The Court is authorized – indeed, obligated – to consider the underpinnings of § 2G2.2, and Mr. Bellini's position that

the range  produced by the mechanical application of that range is not a useful guide to the

determine the statutorily mandated minimally sufficient sentence.

The United States Sentencing Commission has repeatedly and publicly acknowledged

that the child support guidelines are not rooted in empirical data; rather they are responses to

Congressional mandates.  As far back as 2009, the Commission wrote that for "more than 30

years, and particularly in recent years, Congress has focused attention on the scope of child

pornography offenses and the severity of penalties for child pornography offenders.  Through

creating new offenses, enacting new mandatory minimums, increasing statutory maximums, and

providing directives to the Commission, Congress has repeatedly expressed its will regarding

appropriate penalties for child pornography offenders.  Congress has specifically expressed an

intent to raise penalties associated with certain child pornography offenses several times through

directives to the Commission and statutory changes aimed at increasing the guideline penalties

and reducing the incidence of downward departures for such offenses."  USSC, The History of

the Child Pornography Guidelines, October 2009, page 6.  "Repeatedly expressed its will" is

simply polite government speak meaning Congress made us increase the guidelines.  It is a not-

so-thinly veiled complaint by the USSC that these particular guidelines are not evidence based as

they are mandated to do; rather they are subject to the political whims of Congress, resulting in

more punitive guidelines than can be supported by the Commission's evidence-based mandate.

The Commission also noted that in passing "18 U.S.C. § 3553(b)(2)(A), enacted by § 401

of the PROTECT Act, [Congress] sought to reduce below-guideline sentences for 'child crimes

and sexual offenses,' including child pornography offenses."  Id., fn 29.  This statute remains in

effect today.  However, the Commission also noted that after the Supreme Court held the

mandatory application of the guidelines violated the Sixth Amendment and excised § 3553(b)(1)

as unconstitutional in <u>United States v. Booker</u>, 543 U.S. 220 (2005), "every court of appeals to address [whether <u>Booker</u> applies to §3553(b)(2)(A)] has concluded that <u>Booker</u> likewise requires the excision of that provision. <u>United States v. Hecht</u>, 470 F.3d 177, 181 (4th Cir. 2006); <u>United States v. Shepherd</u>, 453 F.3d 702, 705 (6th Cir. 2006); <u>United States v. Grigg</u>, 442 F.3d 560, 564 (7th Cir. 2006); <u>United States v. Jones</u>, 444 F.3d 430, 441 n. 54 (5th Cir. 2006); <u>United States v. Selioutsky</u>, 409 F.3d 114, 117 (2d Cir. 2005); <u>United States v. Yazzie</u>, 407 F.3d 1139, 1145 (10th Cir. 2005)." <u>Id.</u>, fn 29.

The last published Fourth Circuit opinion concerning a below guidelines sentence appears to be <u>United States v. Helton</u>, 782 F.3d 148, 157-59 (4th Cir. 2015), and the appellate court upheld the sentence. Judge Gregory's concurring opinion is of particular note to this issue. He notes that the "child pornography Guideline has been recognized as an 'eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results.' <u>United States v. Dorvee</u>, 616 F.3d 174, 188 (2d Cir. 2010)." <u>Id.</u>, at 157. He also notes that the "Guideline also frequently punishes first time offenders with the same severity as more culpable offenders. This is because several of the § 2G2.2 enhancements of a defendant's base offense level are broadly defined and present in nearly all Internet child pornography cases, like an enhancement for using a computer. <u>See, e.g., United States v. Burns</u>, No. 07 CR 556, 2009 U.S. Dist. LEXIS 100642, 2009 WL 3617448, at *7 (N.D. Ill. Oct. 27, 2009) ('[M]ost of the enhancements provided for in § 2G2.2 are of little use in distinguishing between offenders.')" <u>Id.</u>, at 157-58. Lastly, he notes that "[s]tatistics show that in non-production cases in fiscal year 2013, a two-level enhancement for using a computer applied in 95% of cases, a two-level enhancement for involvement of a child victim under the age of 12 (that is, a prepubescent minor) applied in 96% of cases, and a five-level enhancement for 600 or more images applied in

79% of cases.  Such realities have led the Sentencing Commission to conclude that § 2G2.2 'places a disproportionate emphasis on outdated measures of culpability,' resulting in 'penalty ranges [that] are too severe for some offenders and too lenient for other[s].'" Id., 158.

> He goes on to recognize that:
>
> These limitations are the result of the Guideline having been "developed largely pursuant to congressional directives" as opposed to the Sentencing Commission's expertise.  United States v. Grober, 624 F.3d 592, 608 (3d Cir. 2010); see also id. ("[T]o say that the final product is the result of Commission data, study, and expertise simply ignores the facts.").  Congress has been "particularly active" in directing the Commission to increase base offense levels and impose various enhancements, which has resulted in a dramatic rise in penalties over the years. These changes have taken place in the face of resistance by the Commission, and in the form of Congress taking the unprecedented step of directly amending the Guidelines.   Thus, like the former crack cocaine Guidelines, the child pornography Guideline "do[es] not exemplify the Commission's exercise of its characteristic institutional role," which is to propose penalties "base[d on] its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise."  Kimbrough v. United States, 552 U.S. 85, 108-09, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007).  For, what the data actually shows is that 70% of district court judges in 2010 thought the Guideline too severe for crimes of possession. And, in fiscal year 2013, district courts imposed a sentence below the Guideline range in 718 of 1,626 non-production cases.
>
> United States v. Helton, 782 F.3d 148, 157-59 (4th Cir. 2015).

All of these issues apply in this case.  This is Mr. Bellini's first criminal conviction.  As set forth in paragraphs 66 through 89 on pages 16 through 18, Mr. Bellini receives a two-level enhancement for using a computer (paragraphs 68 and 76), a two-level enhancement for involvement of a child victim under the age of 12 (that is, a prepubescent minor) (paragraph 74), and a five-level enhancement for 600 or more images (paragraph 77).

For all the reasons set forth above, it is clear that in these types of cases the guidelines are not based on empirical data, and the court ought not follow them in this case and grant the departure or variance requested.  Even if the court find the guidelines calculations are

appropriate, Mr. Bellini has shown this case is one that falls outside the "heartland" of these types of cases and thus warrants a departure, and that "the case warrants a different sentence *regardless*." Rita, 127 S. Ct. at 2465 (emphasis added).   Considering all the evidence under this criterion supports Mr. Bellini's request for the court to impose the ten year mandatory minimum sentence.

> **5.    Section 3553(a)(6): The need to avoid unwarranted disparity among defendants with similar records who have been found guilty of similar conducts.**

The Commission's latest report concerning sex offense guidelines, Mandatory Minimum Penalties for Sex Offenses in the Federal Criminal Justice System, was published in January 2019.  The Commission found that in "fiscal year 2016, sexual abuse offenders had high rates of both government-sponsored and non-government sponsored below range sentences.  Offenders receiving non-government sponsored below range sentences comprised 24.8 percent of all sexual abuse sentences, 27.4 percent of those who were convicted of a sexual abuse offense carrying a mandatory minimum penalty, and 29.8 percent of those who were subject to a mandatory minimum penalty at sentencing, compared to 21.8 percent, 21.8 percent, and 27.4 percent for all offenders, offenders convicted of an offense carrying any mandatory minimum, and offenders subject to any mandatory minimum penalty, respectively."  USSC, Mandatory Minimum Penalties for Sex Offenses in the Federal Criminal Justice System, page 28 (January 2019).  The rates of below range sentences were found to have significantly increased from 17.8 percent, 17.3 percent, and 18.0, respectively, from the previous report released in 2016.  Id., at 29.

Additionally, "the average sentence imposed in fiscal year 2016 for offenders convicted of a sexual abuse offense carrying a mandatory minimum penalty was three years shorter than the average minimum guideline sentence, the largest difference since 2004."  Id., at 30.

These statistics provided by the U.S. Sentencing Commission directly show that in the

average sex abuse case courts are routinely imposing sentences some three years lower than set forth by the Guidelines.  Since Mr. Bellini has shown why his case is outside the normal, average, mine-run case, imposing a sentence below the guidelines does not create an unwarranted disparity among defendants with similar records who have been found guilty of similar conduct.  However, even if the court disagrees and finds Mr. Bellini's case to be an average case, imposing a below the guidelines sentence still would not create an unwarranted disparity given the large percentage of cases in which such below guidelines sentences are imposed.

      **6.**     **Section 3553(a)(7).**

At the plea hearing on August 4, 2020, after inquiry from the court, the United States conceded that the federal law modifying restitution in child pornography cases passed in 2018, known as the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, does not apply to this case so as to require a payment of a mandatory minimum $3,000.00 in restitution to each identified person who claims restitution.  Nonetheless, Mr. Bellini has agreed to pay $3,000.00 in restitution to each of the three identified persons who submitted a restitution claim.

<u>**WITNESSES EXPECTED TO TESTIFY**</u>

In accordance with the court's sentencing scheduling order entered August 5, 2020, Mr. Bellini advises the following persons may testify at the hearing: Dr. Mark E. Hastings Ph.D., Mr. Kevin W. Weiman, Mr. Roger A. Bellini.  Amanda Powers, his sister, currently resides in Ghana, and has submitted a statement in support of her brother, which is attached as attachment #6.

**CONCLUSION**

In keeping with the requirements set forth in <u>Koon</u>, Mr. Bellini moves this court to consider the person before it and view that case as the "unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  <u>Koon v. United States</u>, 518 U.S. 81, 113 (1996).

Some incontrovertible facts show this court that this is not the typical child pornography or sexual abuse case.  First, Mr. Bellini immediately confessed to these crimes and began fully cooperating with law enforcement on October 16, 2017 yet the United States did not charge him with any crimes for over two years, during which time he remained free and traveled frequently and regularly to New York for his job.  Second, after being charged he continued to remain free and overall complied with his release conditions.  Third, after being confronted by law enforcement he immediately ceased viewing child pornography, and even signed releases to give law enforcement all his computers and electronic devices so they could search them all for any additional indicia of crimes.

Indeed, the actions of the United States belie any argument that a fourteen-year prison sentence is somehow more appropriate than a ten-year sentence.  Such an argument begs any reasonable person to pose some basic, unanswerable questions:  If what he did was so heinous or he is so dangerous to the public now as to need fourteen years incarceration rather than ten, then why did the United States leave him free and take over two years to charge him with a crime? When the court announced it was going to remand him to jail immediately at the plea hearing, why did the United States not object to allowing him to remain free and report to jail later?  Arguing now for a longer prison sentencing simply cannot be squared with the actions of the United States in this case.

There are other items that set this case apart from the average case. Mr. Bellini voluntarily underwent a sexual psychological evaluation with Dr. Hastings. He also voluntarily and without any court order enrolled in and completed the Changing Offender Behavior in the WVRJ which has started him down his road of treatment and recovery, and gave him valuable insight into his past behavior that enabled him to realize that he had been abusing prescription pills. Also, Dr. Hastings found that Mr. Bellini is "an individual who no longer hold[s] distorted perceptions concerning his behavior and who reports a greater degree of control over his behavior than other child pornography offenders. These are positive indicators for treatment." FPE, at 16. Dr. Hastings also noted that "Mr. Bellini has been in the community for nearly three years since detection without incident. This fact and his overall history indicate he is likely to be cooperative with post-release supervision efforts." FPE, at 27. All of these are very noteworthy items that show why this case is not the average such case before the court.

Mr. Bellini now comes before this Court requesting a simple recognition that he desires to pay his debt for his crimes, then rebuild and improve his life to become a productive citizen. Against this backdrop, and in light of the case law and all the sentencing information set forth above, coupled with Mr. Bellini' life history and the facts of this case, justice surely requires granting Mr. Bellini's motion as requested. Mr. Bellini therefore requests this court grant either a departure or variance and sentence him to the minimum mandatory ten years incarceration, which is a sentence that is sufficient, but not greater than necessary, in compliance with the purposes of sentencing as set forth in 18 U.S.C. § 3553.

Respectfully submitted this 28th day of February 2021.

ROGER ALLAN BELLINI

s/Seth C. Weston
By: Seth C. Weston, Esq.

Law Office of Seth C. Weston, PLC
313 Campbell Avenue SW
Roanoke, Virginia 24016
(O) (540) 342-5608
(F) (540) 301-2209
Email: seth@scwestonlaw.com
Bar # 47523
Counsel for Roger Allan Bellini

<u>Certificate of Service</u>

I hereby certify that I electronically filed this motion on February 28, 2021, with the

Clerk of the Court using the CM-ECMF system, which will electronically notice all counsel of

record.

<u>s/ Seth C. Weston, Esq.</u>
Counsel for Defendant